UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| TARA ANGELEQUE HOLT, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| V. | ) | NO. 2:16-CV-311-HSM-MCLC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant.* | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income were denied administratively by Defendant Commissioner following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of that final decision of the Commissioner. The plaintiff has filed a *pro se* Complaint [Doc. 2], asking the Court to award her benefits, and Defendant Commissioner has filed a Motion for Summary Judgment [Doc. 14]. Plaintiff has not filed any other pleadings besides her complaint.

**I.  Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact

for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

## II.  Sequential Evaluation Process

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?
>
> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

It is important to note, especially in this case, that even if the ALJ finds a severe impairment, that does not end the analysis. The ALJ still must continue along the sequential process in order to determine whether a particular claimant satisfies the disability criteria.

## III. Plaintiff's Vocational Characteristics

Plaintiff was born in 1978 and was a younger person under the applicable regulations at the time she filed her application. She alleges that she became disabled on August 21, 2012 due to limitations from bipolar disorder, depression, headaches, neuropathy, back injury, stomach problems, bowel problems, fibromyalgia, endometriosis, and breathing problems (Tr. 241, 244, 278). Her insured status expired on December 31, 2015 (Tr. 62). Accordingly, she must establish disability on or before that date in order to be entitled to benefits. 20 C.F.R. § 404.130.

## IV. Evidence in the Record

On August 21, 2012, Plaintiff injured her back doing a patient transfer in the scope of her employment as a CNA (Tr. 684). She went to the emergency room three days later complaining of low-back pain (Tr. 543-46). An MRI of her lumbar spine revealed no fractures or subluxations (Tr. 544, 547-48). In October 2012, Dr. Paul Johnson, an orthopedist, treated Plaintiff for low back pain. (Tr. 425). He noted that Plaintiff stood well with good balance and could flex and extend appropriately (Tr. 425). Another MRI of her lumbar spine revealed no fractures, but showed a small annular tear between L5-L5 as well as a protruding disc at the level mildly displacing the origin of the L5 nerve root (Tr. 424). Dr. Johnson released her to work, limiting her to lifting objects weighing less than 10 pounds (Tr. 424).

She then continued to be treated for her low-back pain by Dr. Steve Sanders, a neurologist and Dr. Mohamed Abdelrahman, also a neurologist. (Tr. 429-430, 502-06). Kent Sauter, M.D., in December 2012, performed an independent medical examination for worker's compensation. (Tr.

436-441). He assessed Plaintiff with chronic low-back pain from a lumbar strain, which he concluded had been treated appropriately and recommended no further treatment. He recommended over-the-counter anti-inflammatory medications for her symptoms. (Tr. 441). He opined that she had no restrictions and could return to work. (Tr. 441).

In February 2013, Rob Pearse, M.S., C.F.E., conducted an functional capacity evaluation ("FCE") (Tr. 472-93). Because he found Plaintiff made an unreliable effort on the FCE, he could not determine any restrictions that would apply (Tr. 471).

In June 2013, David McConnell, M.D., performed a physical consultative examination (Tr. 694-701). He noted that she smokes 1 ½ packs of cigarettes a day and complained of low-back pain. His assessment was chronic low-back pain, bipolar disorder (not diagnosed at the exam), reactive airway disease, and chronic cigarette abuse. (Tr. 696). He opined that she retains the ability to occasionally lift 35 pounds and frequently lift 30 pounds, stand and walk with normal breaks for a total of at least seven hours in an eight hour workday, and sit with normal breaks for a total of at least eight hours in an eight hour workday. (Tr. 696).

In June 2013, Shana Hamilton-Lockwood, Ph.D., H.S.P., performed a psychological consultative examination (Tr. 703-07). She noted that Plaintiff had complained of bipolar disorder and depression and PTSD. She opined that Plaintiff fell into the low average range of intellectual functioning and was moderately impaired in short term memory functioning and ability to sustain concentration (Tr. 706). She assessed Plaintiff with no impairment in her long term and remote memory functioning. (Tr. 706). She assessed marked impairment in her social relating and ability to adapt to change. She noted, however, that she appeared to be able to follow instructions, both written and spoken. (Tr. 707). She assessed her with PTSD and major depressive disorder, recurrent, moderate (Tr. 707).

4

In July 2013, State agency psychological consultant Duncan Currey, Ph.D., contrary to Dr. Hamilton-Lockwood's opinion, found Plaintiff's mental impairments resulted in mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation (Tr. 125). Dr. Curry noted that Plaintiff could not interact effectively with the general public but retained the ability to relate appropriately to peers and supervisors (Tr. 126). Dr. Currey noted that she can adapt to infrequent change in the workplace (Tr. 129).

In August 2013, Kimberlee Terry, M.D., found Plaintiff had no severe physical impairments (Tr. 124-25). She noted Dr. McConnell's opinion but found that it was inconsistent with the objective medical evidence and his findings on examination (Tr. 124-25).

In December 2013, Edward Sachs, Ph.D., a State agency psychological consultant, found Plaintiff's mental impairments resulted in mild restrictions of activities of daily living; moderate difficulties in social functioning; moderate difficulties maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. 166). He noted that Plaintiff could understand and remember simple and low-level detailed instructions and could maintain attention and concentration for simple and low-level detailed tasks (Tr. 172). He also found that she could not effectively interact with the general public but could relate appropriately to peers and supervisors. *Id.* His opinion was also in contrast to that of Dr. Hamilton-Lockwood.

In February 2014, State agency medical consultant Denise Bell, M.D., opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours; and sit for 6 hours (Tr. 168). She could frequently perform postural maneuvers (Tr. 169). She had no manipulative, visual, communicative, or environmental limitations (Tr. 169). His opinion was in contrast to that of Drs. McConnell and Johnson.

5

## V. Administrative hearing

Plaintiff testified at the administrative hearing that she had a ninth grade education (Tr. 87) and that her problems breathing, recurrent panic attacks and back pain prevented her from working (Tr. 88). She reported past relevant work as a CNA, baker at Food City, a receptionist at H&R Block and a phone operator (Tr. 88-89). Also testifying at the hearing was the vocational expert, Adrian Bentley Hankins, Ph.D., who described Plaintiff's past work as a nursing home housekeeper. The ALJ asked the VE to assume a hypothetical individual with Plaintiff's educational and prior work experience and limited to the residual functional capacity of medium work. The VE noted that Plaintiff's past relevant work was unskilled occupationally and required medium level of exertion (Tr. 98). He testified that she could return to her past relevant work as a nursing home housekeeper (Tr. 99). He also identified additional occupations which she could perform: a kitchen helper or dishwasher for which there are 250,000 full-time positions nationally and 4,000 – 4,500 in Tennessee; an order picker or warehouse worker for which there are 55,000 full time positions nationally, and 1,200-1,500 in Tennessee; and laundry worker, with 35,000 positions nationally and 750 in Tennessee. (Tr. 99-100). Plaintiff's counsel asked no questions of the VE.

## VI. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2015 and had not engaged in substantial gainful activity since August 21, 2012, the alleged onset date of Plaintiff's disability (Tr. 64). The ALJ found Plaintiff had severe impairments of fibromyalgia; degenerative disc disease; disorders of muscle, ligament, and fascia; curvature of the spine; peripheral neuropathy; anxiety disorder; and an affective disorder (Tr. 64). He found that Plaintiff's chronic obstructive pulmonary disease was not severe. He based this on the fact

that this condition was controlled with medication, that she had few complaints of difficulty breathing during this time period, and that the State agency medical consultant opined that she did not have a severe breathing impairment. (Tr. 65).

The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpt. P, App'x 1 (20 C.F.R. § 404.1520(d), 416.920(d)). (Tr. 65). In making this finding, the ALJ found Plaintiff's mental impairment did not meet or medically equal the criteria of listing 12.04 and 12.06 as her impairment did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation. He noted that Plaintiff had mild restrictions in activities of daily living, observing Plaintiff "reported no psychological barriers to performing personal care … [that] she was able to make sandwiches, and she has help with house and yard work." (Tr. 65). He also noted that she shops in stores for food and clothes when she is able, can pay her bills and count change with help (Tr. 65). She can manage her finances, prepare simple meals, wash dishes, vacuum, sweep, and do laundry. She also reported driving less than once a week because she does not own a car and attends church occasionally. He found Plaintiff had "moderate" difficulties in social functioning. She reported staying to herself, but is able to get along with authority figures. He found moderate difficulties regarding concentration, persistence and pace (Tr. 66). He found no episodes of decompensation. Because the ALJ did not find Plaintiff's mental impairments did not result in marked limitations in at least two of these categories, the Listings were not satisfied (Tr. 65).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following exceptions:

> she is limited to frequent climbing, balancing, stooping, kneeling, crouching, and crawling. Further, [Plaintiff] can understand and remember both simple and low

> level detailed instructions and can maintain attention and concentration for simple and low level detailed tasks with appropriate breaks within the applied limitations; has the ability to maintain attention and concentration for simple tasks with appropriate breaks with the limitations applied; cannot effectively interact with the general public but has the ability to relate appropriately to peers and supervisors within the limitations applied; and [Plaintiff] can adapt to infrequent change with the limitations applied.

(Tr. 67).

In reaching this RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 68). Regarding her back pain, while he noted that she has a history of back pain, the level of pain has been inconsistent with the objective medical evidence. (Tr. 68). He noted that imaging of the lumbar spine was normal. In October, Dr. Johnson ordered an MRI of the lumbar spine, which was interpreted as negative. Dr. Johnson did interpret the MRI to show a small annular tear and prescribed physical therapy and released her back to work with lifting restrictions of less than 10 pounds. Dr. Hoamed Abdelrahman, her neurologist, conducted EMG testing of the upper extremities, which were all normal. (Tr. 68).

The ALJ also considered the opinion of Dr. Kent Sauter, who performed a consultative examination. He reviewed the MRI and interpreted it as having no herniations of the discs and no fractures of the vertebrae. He diagnosed chronic low back pain and found no additional treatments were needed. At the functional capacity examination ("FCE"), the ALJ noted that she gave an unreliable effort. As a consequence, the evaluator could not give an opinion regarding her restrictions. (Tr. 69). In March 2013, Dr. Sanders released Plaintiff back to work with no restrictions.

The ALJ further discussed all of the medical evidence in the record. He gave great weight to Dr. Bell and Dr. Sachs, finding their opinions to be consistent with the evidence of record. He gave some weight to Dr. Currey, but found that his limitation to simple instructions and tasks was not supported by the record. He noted that Dr. Sachs had the opportunity to review additional evidence in finding that Plaintiff could understand and perform simple and low level detailed tasks. (Tr. 71). He gave some weight to the opinion of Dr. McConnell. But the ALJ noted that Dr. McConnell did not have the opportunity to review all of the objective testing, which indicates a greater ability to lift and carry than he opined she could perform. The ALJ specifically referred to the EMG testing and the minimal findings on the lumbar imaging studies, which Dr. McConnell did not review. He gave little weight to the opinion of Dr. Johnson, who limited Plaintiff to lifting less than 10 pounds (Tr. 72). He also gave little weight to Dr. Hamilton-Lockwood's opinion that Plaintiff had marked difficulties in social functioning, pointing to inconsistencies in the doctor's own report. He also gave little weight to the GAF ratings as the providers did not explain the basis for the scores and his findings that they are not consistent with Plaintiff's "generally benign clinical presentations." (Tr. 72). The ALJ also noted restrictions were placed on her during her worker's compensation claim but that she later was released to work with no restrictions whatsoever. Finally, the ALJ noted that she received conservative care throughout this time period and the objective medical testing was not consistent with her allegations of disabling pain. The ALJ noted that though she complained of back pain, the MRI was normal. Though she complained of disabling mental limitations, she was never hospitalized or utilized crisis intervention services. Though she claimed she could not perform any work related functions, she essentially refused to cooperate for the functional capacity examination.

After coming to this RFC, the ALJ determined, based on the testimony of the VE, that Plaintiff could return to her past relevant work as a nursing home housekeeper. The ALJ also made the alternative finding that other jobs existed in the national economy she could perform. He first considered her RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. He found that she had nonexertional limitations that precluded the use of the Grids, and sought the testimony of the VE. The VE testified that Plaintiff could perform the requirements of the occupations of a kitchen helper and dishwasher, order picker, and a laundry worker. He found that the VE's testimony was consistent with that of the Dictionary of Occupations Titles. Accordingly, the ALJ found Plaintiff was not disabled.

## VII. Plaintiff's Assertions of Error and Analysis

Plaintiff filed this action *pro se*. Her attorney withdrew after the adverse ruling by the Commissioner. In her complaint, Plaintiff alleges that the ALJ acknowledged that she suffered from severe impairments but nevertheless denied her claim. [Doc. 1, pg 1]. That is the essence of her claim.

A little overview is in order to address Plaintiff's essential argument. Disability is defined by law as being unable to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 20 CFR §§ 404.1505(a)(4), 416.905(a). As noted, the Commissioner follows a sequential process. At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. If the claimant is not working, then the Commissioner must determine at step two whether the claimant has a severe impairment or

combination of severe impairments that significantly limit her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments do not so limit the claimant, then she is not disabled. If the Commissioner finds that the claimant has severe impairments, then the Commissioner proceeds to the next step. Contrary to Plaintiff's claim, the fact that an impairment is severe does not equate to a finding of disability. Rather, the Commissioner must continue along the sequential process to properly analyze the claim.

The ALJ continued along this process. Step three addresses whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart P of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii). The claimant will be determined to be automatically disabled without consideration of her age, education or work experience if her impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. See *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). If the impairments do not meet a listing, then the Commissioner must determine at step four whether the claimant retains the residual functional capacity (RFC) given her impairments to permit a return to any of her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant, despite her severe impairments, who can return to her past relevant work, is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3). That is where this case ends. The ALJ found that, despite Plaintiff's severe impairments, they did not either individually or in combination preclude her from returning to her past relevant work as a nursing home housekeeper. (Tr. 73). The ALJ could have ended the analysis at that point, finding her not disabled. If he had, the Court would have found substantial evidence to support that conclusion, given the VE's testimony regarding the exertional and

nonexertional limitations regarding Plaintiff's past relevant work, and his opinion that she was capable of performing her past relevant work.

In this case, however, the ALJ took the next step out of an abundance of precaution. At step five, the burden is on the Commissioner to show that the claimant, who cannot return to her past relevant work, remains capable of performing alternative work in the national economy given her residual functional capacity, age, education and past relevant work experience. See 20 CFR §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). In this case, the ALJ utilized the expert services of a vocational expert. Dr. Hankins identified other jobs which were within the Plaintiff's residual functional capacity that he opined she could perform. Those jobs he identified (kitchen helper, dishwasher; order picker; and laundry worker) all existed in sufficient numbers in the national and local economy. Because there are jobs Plaintiff can perform and because they exist in sufficient numbers in the economy, the ALJ concluded that Plaintiff was not disabled. Thus, even if the ALJ erred in finding that Plaintiff could return to her past relevant work, the error would be harmless given the availability of other jobs in sufficient numbers the Commissioner identified Plaintiff could in fact perform.

The Court could end this analysis at this point. The only issue raised by Plaintiff in her *pro se* complaint was her mistaken belief that if the ALJ found her impairments to be severe, he was required to find her disabled. That issue has already been addressed. However, the Court will examine the substance of the ALJ decision in ruling on Plaintiff's case.

First, regarding the ALJ's treatment of Plaintiff's credibility, the Court finds the ALJ properly evaluated Plaintiff's credibility. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility

determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Id.* The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Soc. Sec. Ruling 16-3p; *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016).

> In making judgments about a claimant's credibility, the ALJ should consider:
>
> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms ...; and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). SSR 16-3p provides that an ALJ must consider the "entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record" and notes that the ALJ will "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." S.S.R. 16-3p, 2016 WL 1119029 at *5.

In this case, the Court has reviewed the ALJ's decision and finds he has complied with the requirements of the regulations in assessing a claimant's credibility. He compared her subjective

allegations against the objective medical evidence. He found a normal CT scan of the brain, and imaging of the lumbar spine revealed no fractures or subluxations. EMG testing of the upper extremities was normal. Dr. Sauter reviewed the MRI of the lumbar spine and interpreted it as having no herniations and no fractures or spondylolisthesis. He further noted that she gave "unreliable effort" when she underwent a functional capacity examination. In March 2013, Dr. Sanders released her back to work with no restrictions.

Considering her fibromyalgia impairment, the ALJ noted that she took no medications for the impairment. Concerning her bipolar diagnosis, she took no medications and was not receiving any treatment for the condition. Concerning her allegations regarding trouble breathing, she reported taking no medication for breathing and continued to smoke 1 ½ packs of cigarettes a day.

The ALJ properly weighed the medical expert opinions in arriving at Plaintiff's RFC. He gave detailed reasons why he rejected some medical opinions and why he accepted others. Regarding Drs. Bell and Sachs, he gave their opinions great weight. Dr. Bell assessed Plaintiff's physical abilities, opining that she could perform at a medium level of exertion. (Tr. 168). The ALJ accepted that opinion and utilized that in formulating Plaintiff's RFC.

He discounted the opinion of Dr. McConnell and Dr. Johnson. Regarding Dr. McConnell's opinion, the ALJ properly noted that Dr. McConnell had not reviewed all of the objective medical evidence in arriving at his opinion. Specifically, the ALJ noted that the EMG testing was negative and there were only minimal findings on the lumbar study. Dr. McConnell did not review these studies. Concerning Dr. Johnson, he gave little weight. Dr. Johnson had restricted her to lifting less than 10 pounds. He placed limited weight on his opinion given Plaintiff's course of treatment, including the rather benign clinical observations and objective medical evidence. He gave little weight to Dr. Hamilton-Lockwood's opinion regarding Plaintiff's social functioning. He noted

that although Dr. Hamilton-Lockwood found marked limitations in social functioning, Plaintiff was cooperative and pleasant throughout the interview. Also, the ALJ noted that Plaintiff had never been fired or laid off due to problems getting along with others. Rather, she was able to get along with others just fine in her other occupations. She only stopped working because of a work-related injury. The reasons he gave were specific and supported by specific citations to the record.

Finally, the Court finds the hypothetical posed to the VE was supported by substantial evidence. Dr. Bell opined that Plaintiff could perform work at medium exertional level with frequent posturals (climbing, balancing, stooping, kneeling, crouching, and crawling). Thus, that aspect of the RFC is supported by substantial evidence. Dr. Sachs opined that Plaintiff could understand and remember both simple and low level detailed instructions and could maintain attention and concentration for simple and low level detailed tasks with appropriate breaks, that Plaintiff could not effectively interact with the general public but could relate appropriately with peers and supervisors, and Plaintiff can adapt to infrequent changes in the work environment. (Tr. 172). The ALJ accepted those limitations and incorporated them into his hypothetical to the VE. Based on those assumptions, the VE testified that "the essential functions of these three occupations that I identified (kitchen helper, order picker, and laundry worker) should not be precluded by these mental limitations." (Tr. 101). Thus, the Court finds substantial evidence supports the hypothetical to the VE.

## VIII. Conclusion

The Court finds substantial evidence supports the ALJ's reasoning in his decision finding Plaintiff not disabled. The Court RECOMMENDS that the Commissioner's motion for summary

judgment [Doc. 14] be GRANTED for the reasons stated herein and for the reasons stated, that the case be DISMISSED.[1]

                                            Respectfully Submitted,

                                            s/ Clifton L. Corker
                                            United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).